IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JUANA M. AVILA, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **EP-12-CV-293-KC** |
| | § | |
| EL PASO COUNTY, | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered Plaintiff's Motion for Partial Summary Judgment, ECF

No. 17, in the above-captioned case.  For the reasons set forth below, Plaintiff's Motion is

**DENIED**.

## I.    BACKGROUND[1]

Plaintiff began working as Defendant's employee in 1999.  *See* Pl.'s Proposed

Undisputed Facts ¶ 8, ECF No. 18; Def.'s Resp. to Proposed Undisputed Facts 3, ECF No. 19.

During the first part of 2012, Plaintiff was working for Defendant as an office supervisor in the

El Paso County Clerk's Office.  *See* Pl.'s Mot. Ex. A ("Avila Affidavit") at 1-2, ECF No. 17-2;

Def.'s Resp. Ex. A ("Briones Affidavit") at 1-2, ECF No. 20-1; Def.'s Resp. Ex. B ("Sagaribay

Affidavit") at 1-2, ECF No. 20-2; Def.'s Resp. Ex. C ("Duran Affidavit") at 1-2, ECF No. 20-3.

On April 16, 2012, Plaintiff contacted one of Defendant's human resources coordinators,

Valeria Fernandez, to notify her that certain "medical procedures" were being "done to

[Plaintiff's] back."  Pl.'s Mot. Ex. B ("Plaintiff's E-Mail Conversation") at 3, ECF No. 17-3.

---

[1] Because many of the exhibits in the record lack page numbers of their own or are not numbered consecutively, this Order refers to the page numbers supplied at the top of each page of the record by the electronic docketing system. For the purposes of this Order, this convention is applied to all the parties' filings in this case, including the parties' pleadings, motions, and briefs.

Plaintiff explained that she would "need to take some time off" due to these procedures, and arranged to meet with Valeria Fernandez regarding the possibility of taking leave under the Family Medical Leave Act ("FMLA").  *Id.*

Three days later, on April 19, 2012, Valeria Fernandez completed a form entitled "Notice of Eligibility and Rights & Responsibilities," which is the United States Department of Labor's Form WH-381.  Pl.'s Mot. Ex. C ("Plaintiff's Form WH-381"), ECF No. 17-4.  The form memorialized Plaintiff's eligibility for FMLA leave and Plaintiff's request for intermittent leave on the basis of a serious health condition.  *Id.* at 1.  The form explained that "in order for [Defendant] to determine whether [Plaintiff's] absence qualifies as FMLA leave," Plaintiff was required to provide medical certification of her serious health condition by May 4, 2012.  *Id.*  A certification form was attached for Plaintiff to forward to her health care provider.  *Id.* at 2-5.

The following day, on April 20, 2012, Defendant informed Plaintiff in a brief letter that her employment had been terminated.  Pl.'s Mot. Ex. D ("Termination Letter"), ECF No. 17-5.  After the termination of Plaintiff's employment, the words, "employee termed—did not receive med. cert." were written by hand in the upper margin of Plaintiff's Form WH-381.  *See* Pl.'s Mot. Ex. I ("Plaintiff's Revised Form WH-381"), ECF No. 17-10.

According to Defendant, the decision to terminate Plaintiff's employment was based on Plaintiff's disrespectful and unprofessional behavior in the workplace.  *See* Sagaribay Aff. 1-2; Duran Aff. 1-2.  Defendant alleges that a conference was held with Plaintiff on August 17, 2010, to discuss Plaintiff's ongoing rudeness toward employees and customers.  Sagaribay Aff. 2.  Plaintiff was allegedly counseled again on February 4, 2012, for conduct "unbecoming of an Office Supervisor."  Duran Aff. 2.  On April 16, 2012, the same day that Plaintiff first notified Defendant's human resources coordinator of her intent to take FMLA leave, Plaintiff allegedly

refused "to file map plats presented by the El Paso City Planner."  *See* Sagaribay Aff. 2; Duran

Aff. 2; Briones Aff. 2.  According to Defendant, a refusal to file map plats is contrary to the

duties associated with Plaintiff's position as an office supervisor.  *See* Sagaribay Aff. 2; Duran

Aff. 2; Briones Aff. 2.

On June 12, 2012, Plaintiff filed a petition in County Court at Law No. 41 in El Paso

County, Texas.  Notice of Removal 8, ECF No. 1.  In this petition, Plaintiff claimed that

Defendant had violated Plaintiff's rights under the FMLA by terminating her employment.  *Id.* at

10.  On July 26, 2012, Defendant filed a Notice of Removal and invoked this Court's federal

question jurisdiction under 28 U.S.C. § 1331.  *See id.* at 1.  On April 1, 2013, Plaintiff filed her

Motion for Partial Summary Judgment.  Pl.'s Mot. 1.

## II.      DISCUSSION

### A.      Standard

A court must enter summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CCA

Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of

one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star

State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232

F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of

3

informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show

the existence of a genuine dispute, the nonmoving party must support its position with citations

to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

answers, or other materials[,]" or show "that the materials cited by the movant do not establish

the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c).

A court resolves factual controversies in favor of the nonmoving party; however, factual

controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a

'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Further, when reviewing the evidence, a court must draw all reasonable inferences in favor of the

nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland,*

*Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a

summary judgment motion is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52.

### B.      Analysis

Plaintiff argues that she is entitled to summary judgment under 29 U.S.C. § 2615(a)(1).

Pl.'s Mot. 6-10.  Under this provision, it is unlawful for an employer to "interfere with, restrain,

or deny the exercise of or the attempt to exercise, any right" that is conferred upon an employee

by the FMLA.  *See* 29 U.S.C. § 2615(a)(1) (2012).  The central premise of Plaintiff's argument is

that 29 U.S.C. § 2615(a)(1) is governed by a strict liability standard.  *See* Pl.'s Mot. 6-7.  In

Plaintiff's view, this standard is met in this case because the termination of Plaintiff's

employment prevented her from exercising her right to leave under the FMLA, regardless of

Defendant's reasons for the termination decision.  *Id.* at 6-10.  The Court first reviews the

structure of the FMLA and Plaintiff's legal argument regarding the strict liability standard,

before then turning to evaluate the parties' evidence as to the facts of Plaintiff's case.

### 1.      The structure of the FMLA

It is well established that the FMLA contains both "prescriptive" and "proscriptive"

provisions.  *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *Hunt v.*

*Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 763 (5th Cir. 2001); *see also Mauder v. Metro.*

*Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006); *Nero v. Indus. Molding*

*Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).  The statute "prescriptively" confers a series of

substantive rights upon covered employees, including the right to take twelve weeks of unpaid

leave where the employee suffers from a serious health condition and the right to be reinstated to

the employee's previous position upon returning from leave.  *Haley*, 391 F.3d at 649 (citing 29

U.S.C. § 2612(a)(1)(D) and § 2614(a)(1)); *Hunt*, 277 F.3d at 763 (same).

The "proscriptive" provisions of the FMLA prohibit certain adverse actions by covered

employers that negatively affect the entitlements created by the FMLA's prescriptive provisions.

*Hunt*, 277 F.3d at 763 (citing 29 U.S.C. § 2615(a)(1)-(2)); *see also Bocalbos v. Nat'l W. Life Ins.*

*Co.*, 162 F.3d 379, 383 nn. 17-18 (5th Cir. 1998).  The first of these provisions, 29 U.S.C. §

2615(a)(1), prohibits "interference" with an employee's exercise of rights under the FMLA.  *See*

*Haley*, 391 F.3d at 649 ("[C]laims for violations of these rights [created by the FMLA] invoke

entitlement or interference theories and are brought under § 2615(a)(1)."); *see also Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) ("Under § 2615(a)(1), . . . [t]he term 'interference with' includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. . . .  With an interference claim, an employee must show that he was denied his entitlements under the FMLA, or, that an employer did not respect the employee's FMLA entitlements.") (internal citations and quotation marks omitted).  A second provision, 29 U.S.C. § 2615(a)(2), prohibits "retaliation" or "discrimination" against an employee for participating in activity that is protected under the FMLA.  *See Haley*, 391 F.3d at 649; *Hunt*, 277 F.3d at 768; *Bocalbos*, 162 F.3d at 383.

### 2.      Plaintiff's strict liability theory

In her Motion for Partial Summary Judgment, Plaintiff argues that the first of the two proscriptive provisions, 29 U.S.C. § 2615(a)(1), imposes a strict liability standard on employers in all cases.[2]  Pl.'s Mot. 6-7.  At the time when Plaintiff's employment was terminated on April 20, 2012, her request for FMLA leave was still pending.  *See* Pl.'s Form WH-381; Termination Letter.  As a practical matter, because Plaintiff's employment was terminated, Plaintiff had no opportunity to provide Defendant's human resources coordinator with medical certification of Plaintiff's serious health condition in order to begin her intermittent leave under 29 U.S.C. § 2612(a)(1)(D).  *See* Pl.'s Revised Form WH-381 ("employee termed—did not receive med.

---

[2] Plaintiff has erroneously described 29 U.S.C. § 2615(a)(1) as the FMLA's "prescriptive" provision.  *See* Pl.'s Mot. 6-10.  It is apparent, however, from decisions by the Fifth Circuit that both 29 U.S.C. § 2615(a)(1) and § 2615(a)(2) constitute the FMLA's "proscriptive" provisions.  *See Hunt*, 277 F.3d at 763, 768; *Bocalbos*, 162 F.3d at 383.  That is, 29 U.S.C. § 2615(a)(1) *proscribes* interference with an employee's exercise of FMLA rights, while 29 U.S.C. § 2615(a)(2) *proscribes* retaliation or discrimination against an employee under the FMLA.  *See Hunt*, 277 F.3d at 763, 768; *Bocalbos*, 162 F.3d at 383.  It is the provisions that prescribe the individual statutory entitlements—such as the right to leave under 29 U.S.C. § 2612 and the right to reinstatement under 29 U.S.C. § 2614—that are "prescriptive," even though "claims for violations of these rights . . . are brought under § 2615(a)(1)."  *See Haley*, 391 F.3d at 649; *Hunt*, 277 F.3d at 763.

cert."). Based on the strict liability standard that, in Plaintiff's view, governs 29 U.S.C. §

2615(a)(1), Plaintiff argues that these facts are sufficient to support a conclusion at summary

judgment that Defendant interfered with Plaintiff's right to FMLA leave. Pl.'s Mot. 6-10.

### a.   The Fifth Circuit's decisions in *Nero* and *Grubb*

Plaintiff bases her strict liability theory on a brief quotation from *Nero v. Industrial*

*Molding Corporation*, where the United States Court of Appeals for the Fifth Circuit explained

that, "[b]ecause the issue is the right to an entitlement [under the FMLA], the employee is due

the benefit if the statutory requirements are satisfied, regardless of the intent of the employer."

*See Nero*, 167 F.3d at 927 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st

Cir. 1998)). Plaintiff therefore argues that this Court should disregard Defendant's motivations

for terminating Plaintiff's employment because, "regardless of the intent of the employer,"

Defendant's act of termination has prevented Plaintiff from exercising her right to take FMLA

leave under 29 U.S.C. § 2612. Pl.'s Mot. 6-10 (citing *Nero*, 167 F.3d at 927).

In the Court's view, however, Plaintiff's reliance on this brief quotation from *Nero* is

misplaced. Elsewhere in the *Nero* decision, the Fifth Circuit did in fact analyze the employer's

"real reasons" for terminating the employee and the appropriateness of these reasons in the

context of an interference claim under the FMLA. *See Nero*, 167 F.3d at 926. Had the Fifth

Circuit actually concluded that 29 U.S.C. § 2615(a)(1) imposes a strict liability standard, the

Fifth Circuit would never have analyzed the "real reasons for [the employer's] termination

decision." *See id.* To quote the relevant passage in full:

> On the basis of the evidence, a jury could reasonably believe that Nero was
> performing his job properly for a number of months and that the time of IMC's
> termination of Nero (days after his heart attack) was not merely a coincidence. A
> jury also could reasonably believe that IMC's stated reasons for firing Nero—
> substandard management practices and department restructuring—were not the

real reasons for its termination decision.  Although conflicting, some evidence supports the jury's finding that the decision to terminate Nero did not occur prior to his heart attack, and therefore the FMLA entitled Nero to return to his job as plant manager.

*Id.*

Such analysis would have been wholly superfluous to the strict liability standard proposed by Plaintiff.  *See* Pl.'s Mot. 6-10.  The Court also observes that the Fifth Circuit did not state expressly in *Nero* that 29 U.S.C. § 2615(a)(1) is governed by a strict liability standard.  Nor has the Fifth Circuit ever made such a statement, to this Court's knowledge, in any other decision. Therefore, because the Fifth Circuit explicitly considered "the real reasons" for terminating an employee in the context of the employee's interference claim under the FMLA,[3] *Nero* cannot require district courts to disregard completely the reasons for an employee's termination in a claim for interference under 29 U.S.C. § 2615(a)(1).  *See Nero*, 167 F.3d at 926-27.

Indeed, the Fifth Circuit's subsequent decision in *Grubb v. Southwest Airlines* clarifies that the real reasons for an employee's termination may be both relevant and dispositive where the act of termination is the only adverse measure by which an employer has prospectively interfered with the employee's FMLA leave.  *See Grubb v. Sw. Airlines*, 296 F. App'x 383, 391 (5th Cir. 2008).  In *Grubb*, the Fifth Circuit held explicitly that where "termination of [an employee] was otherwise appropriate [under the FMLA], any right to leave would have been extinguished by [the employer's] exercise of that prerogative."  *Grubb*, 296 F. App'x at 391. The basis for this holding was the general principle that "an employee who requests or takes

---

[3] The Court recognizes that this quoted language in *Nero* regarding "the real reasons" for an employee's termination evokes the burden-shifting framework created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), by which district courts "ferret[] out illicit motivations" in retaliation cases brought under the FMLA.  *See Hunt*, 277 F.3d at 768; *see also Mauder*, 446 F.3d at 580, 583; *Grubb v. Sw. Airlines*, 296 F. App'x 383, 389 (5th Cir. 2008). However, the Fifth Circuit carefully explained in *Nero* that it was conducting an interference analysis, not a retaliation analysis under the *McDonnell Douglas* framework, because the plaintiff in *Nero* had "repeatedly disavowed" the theory that "he got fired because of taking the leave" under the FMLA.  *Nero*, 167 F.3d at 926-27.

protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave." *Id.* (internal citation, quotation marks, and alterations omitted). Therefore, where an employee makes a claim of interference under the FMLA after his employment has been terminated, "an employer . . . will not be liable if the employer can prove it would have made the same decision" had the employee not exercised or attempted to exercise the employee's FMLA rights. *Id.* (quoting *Throneberry v. McGehee Desh Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)).

Therefore, to summarize the analysis applied in *Nero* and *Grubb*, where "the issue is the right to an entitlement [under the FMLA], the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer" in denying the entitlement. *Nero*, 167 F.3d at 927 (quoting *Hodgens*, 144 F.3d at 159). In the termination context, however, where "termination of [an employee] was otherwise appropriate [under the FMLA], any right to leave would have been extinguished" by the act of termination. *Grubb*, 296 F. App'x at 391. Accordingly, when a district court must decide at the summary judgment stage whether an employee's FMLA entitlements have been extinguished, the district court must consider whether "a jury could reasonably believe that . . . [the employer's] stated reasons for firing [the employee]" were in fact "the real reasons for its termination decision," such that the termination would have occurred even had the employee not exercised or attempted to exercise the employee's FMLA rights. *See Nero*, 167 F.3d at 926; *Grubb*, 296 F. App'x at 391.

### b.      The approach of other courts

The approach followed by the majority of district courts in the Fifth Circuit confirms that interference claims brought under 29 U.S.C. § 2615(a)(1) are not subject to a strict liability standard in the context of termination. *See Varise v. H & E Healthcare, L.L.C.*, No. CIV.A. 10-

666, 2012 WL 5997202, at *3-4 (M.D. La. Nov. 30, 2012) ("[T]he mere fact of discharge during

FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's

prohibition of interfering with an employee's FMLA rights.") (internal citations omitted);

*Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F. Supp. 2d 643, 654 (S.D. Tex. 2011) ("If the

plaintiff would have been terminated regardless of his request for leave, his interference claim

cannot prevail.") (internal quotation marks and citations omitted); *Butron v. Centerpoint Energy,*

No. 4:10-CV-0369, 2011 WL 2162238, at *8 (S.D. Tex. May 31, 2011) (same); *Crown v. Nissan*

*N. Am., Inc.*, 634 F. Supp. 2d 688, 693 n.8 (S.D. Miss. 2009) (same); *Johnson v. City of Monroe*,

No. 06-CV-635, 2007 WL 2479658, at *1-2 (W.D. La. Aug. 28, 2007) (same); *Anderson v. New*

*Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 570 (E.D. La. 2006)

(same).[4]

    The same approach has been followed by at least seven federal courts of appeals outside

the Fifth Circuit.  *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) ("[I]f a

dismissal would have occurred regardless of the request for FMLA leave, an employee may be

dismissed, preventing her from exercising her right to leave or reinstatement."); *Phillips v.*

*Mathews*, 547 F.3d 905, 911-12 (8th Cir. 2008) ("[E]very discharge of an employee while she is

taking FMLA leave interferes with an employee's FMLA rights . . . .  The employer is not liable

for this interference, however, where an employee's reason for dismissal is insufficiently related

---

[4] Applying a contrary approach, there are at least two district courts which have relied on the language from *Nero* regarding the "intent of the employer" to apply a strict liability standard under 29 U.S.C. § 2615(a)(1), as Plaintiff asks this Court to do.  *See Matamoros v. Ysleta Indep. Sch. Dist.*, No. 3:11-CV-203, 2012 WL 6800505, at *5-6 (W.D. Tex. Feb. 9, 2012); *Shepard v. Tyson Foods, Inc.*, No. 9:06-CV-84, 2007 WL 1127408, at *2 (E.D. Tex. Apr. 16, 2007).  These decisions do not, however, address the Fifth Circuit's own examination of the reasons for the termination of plaintiff's employment in *Nero*, nor do they consider the possibility that claims arising from termination of employment should be analyzed differently from other interference claims under 29 U.S.C. § 2615(a)(1).  *See Nero*, 167 F.3d at 926.  In fact, in the decision where a district court has subjected the question of strict liability to the most rigorous analysis, *Matamoros v. Ysleta Independent School District*, another judge of this Court voiced express reservations that a strict liability standard would actually "disserve[] affected employers and, arguably, the ends of justice."  *See Matamoros*, 2012 WL 6800505, at *5-6 n.11.

to FMLA leave.") (internal quotation marks and citations omitted); *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1097 (9th Cir. 2007) (same); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (same); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006) (same); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877-78 (10th Cir. 2004) (same); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (same).  The Court is not aware of any federal courts of appeals that have applied a strict liability standard under 29 U.S.C. § 2615(a)(1) in the context of termination.

### c.    Conclusion as to strict liability

In the face of such substantial and consistent authority, the Court concludes that Plaintiff has misunderstood the brief quotation from *Nero* regarding "the intent of the employer," at least in the unique context of termination.  *See Nero*, 167 F.3d at 927.  Accordingly, the Court rejects Plaintiff's argument regarding a strict liability standard in cases where an otherwise appropriate termination has "extinguished" an employee's entitlement to FMLA leave.  *Grubb*, 296 F. App'x at 391.

### 3.    Defendant's reasons for terminating Plaintiff's employment

As explained above, this Court cannot grant Plaintiff's Motion for Partial Summary Judgment regarding Defendant's interference with Plaintiff's entitlement to FMLA leave if this entitlement had already been "extinguished" by the termination of Plaintiff's employment.  *See id.*  The Court therefore must now assess whether "a jury could reasonably believe that . . . [the employer's] stated reasons for firing [the employee]" were in fact "the real reasons for its termination decision."  *See Nero*, 167 F.3d at 926.  If "the employer can prove it would have made the same decision" had the employee not exercised or attempted to exercise the employee's FMLA rights, then Defendant will not be liable for preventing Plaintiff from taking leave.  *See*

*Grubb*, 296 F. App'x at 391 (quoting *Throneberry*, 403 F.3d at 977).

Both parties have presented evidence relating to the real reasons for Defendant's

termination decision.  First, Plaintiff has emphasized the timing of her termination, which

occurred only "one day after she submitted her FMLA paperwork," and only three days after

Defendant's staff first received notice of her intent to take FMLA leave.  *See* Pl.'s Mot. 3; *see*

*also* Pl.'s Proposed Undisputed Facts ¶¶ 11-14; Def.'s Resp. to Pl.'s Proposed Undisputed Facts

3.  Second, Plaintiff has produced a letter in which the El Paso County Clerk, Delia Briones, told

one of Plaintiff's fellow employees that "[l]eave without pay is generally discouraged because it

deprives an office/department of needed services."  Pl.'s Mot. Ex. E ("Briones Letter") at 3, ECF

No. 17-6.

In the Court's view, this evidence tends to show that "the time of [Defendant's]

termination of [Plaintiff's employment] . . . was not merely a coincidence."  *See Nero*, 167 F.3d

at 926.  Indeed, the temporal proximity of Plaintiff's request for FMLA leave to her termination

could indicate a causal relationship between the two events, as could Plaintiff's evidence of

potentially hostile remarks by Defendant's senior staff about unpaid leave.  *See Nero*, 167 F.3d at

926 (finding that evidence of temporal proximity is indicative of an employer's intent to interfere

with FMLA rights); *see also Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir.

2005) ("The [employer's] hostile remarks [regarding FMLA leave] . . . raise an issue of fact as to

whether retaliation was a motivating factor in [an employee's] termination."); *Grubb*, 296 F.

App'x at 390 (finding that temporal proximity may support a prima facie case for FMLA

retaliation).  This evidence could persuade a reasonable fact-finder that Defendant would not

"have made the same decision" had the employee not exercised or attempted to exercise the

employee's FMLA rights.  *See Grubb*, 296 F. App'x at 391.  If such is the case, then Plaintiff's

entitlement to leave was not extinguished by the termination of her employment. *See id.*

Plaintiff has therefore carried her "initial burden of production" on this central issue, as is

required of a party seeking summary judgment. *See Celotex*, 477 U.S. at 330-31; *Wallace*, 80

F.3d at 1046-47.

Defendant has also provided evidence, however, regarding the reasons for Defendant's

termination decision, such that this issue requires submission to a jury. *See Anderson*, 477 U.S.

at 251-52. In this case, "a jury could reasonably believe that . . . [the employer's] stated reasons

for firing [the employee]" were in fact "the real reasons for its termination decision," such that

the termination would have occurred even had the employee not exercised or attempted to

exercise the employee's FMLA rights. *See Nero*, 167 F.3d at 926; *Grubb*, 296 F. App'x at 391.

That is, Defendant has provided three affidavits by Plaintiff's former supervisors regarding her

unprofessional behavior and refusal to fulfill duties related to her job. *See* Briones Aff.;

Sagaribay Aff.; Duran Aff. These affidavits state that Plaintiff had been rude and disrespectful

to customers, fellow employees, vendors, and an attorney shortly before her termination in 2012,

and that she had been counseled for similar behavior on more than one occasion between 2010

and 2012. *See* Sagaribay Aff. 1-2; Duran Aff. 1-2. These affidavits also state that Plaintiff

refused "to file map plats presented by the El Paso City Planner" shortly before her termination,

and that this refusal was contrary to the duties associated with Plaintiff's position. *See* Sagaribay

Aff. 1-2; Duran Aff. 1-2; Briones Aff. 1-2.

If, as Defendant argues, Plaintiff was indeed terminated for insubordinate behavior and

refusal to file map plats, and such termination would have occurred regardless of Plaintiff's

request for leave, then Plaintiff's FMLA interference claim must fail. *See Grubb*, 296 F. App'x

at 391; *see also Meinelt*, 787 F. Supp. 2d at 654 ("If the plaintiff would have been terminated

regardless of his request for leave, his interference claim cannot prevail."); *Butron*, 2011 WL 2162238, at *8 ("If an employer can prove that it would have fired the employee for poor performance had the employee not exercised the employee's FMLA rights, the employer will not be liable for interference."); *see also Krutzig*, 602 F.3d at 1236; *Phillips*, 547 F.3d at 911-12; *Sarnowski*, 510 F.3d at 403.

Having reviewed the parties' evidence regarding the reasons for Plaintiff's termination, the Court finds that a decision regarding these reasons is not amenable to summary judgment. At the summary judgment stage, a district court can neither make credibility determinations nor weigh evidence. *Man Roland*, 438 F.3d at 478-79 (citing *Reeves*, 530 U.S. at 150). Though a reasonable fact-finder could conclude based on Plaintiff's evidence of temporal proximity and hostile remarks that her termination was related to her FMLA rights, a reasonable fact-finder might also conclude based on the affidavits submitted by Defendant that Plaintiff would have been fired regardless of her request for FMLA leave.

The Court therefore is unable to decide as a matter of law whether Defendant interfered with Plaintiff's entitlement to FMLA leave in violation of 29 U.S.C. § 2615(a)(1). *See Haley*, 391 F.3d at 649; *Bell*, 432 F. App'x at 334. At the present stage of the proceedings, there remains an issue of fact as to whether Plaintiff's entitlement to FMLA leave was extinguished by her termination. *See Grubb*, 296 F. App'x at 391. In other words, "the evidence presents a sufficient disagreement to require submission to a jury," such that summary judgment is inappropriate. *See Anderson*, 477 U.S. at 251-52. Plaintiff's Motion for Partial Summary Judgment therefore must be denied.

## III.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment, ECF No.

17, is **DENIED**.

     **SO ORDERED**.

     **SIGNED this 6th day of June, 2013.**

                   KATHLEEN CARDONE
                   UNITED STATES DISTRICT JUDGE